UNITED STATES of America,
Plaintiff–Appellee,

v.

Mae BRAXTON, Defendant–Appellant.

No. 88–1968.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 28, 1988.

Decided June 14, 1989.

Stephen J. Eisenberg, Madison, Wis., for defendant-appellant.

Mark A. Cameli, Asst. U.S. Atty., Madison, Wis., for plaintiff-appellee.

Before CUDAHY, MANION, Circuit Judges, and WILL, Senior District Judge.[*]

WILL, Senior District Judge.

Ms. Mae Braxton appeals from her conviction for aiding and abetting the distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (1982). Ms. Braxton alleges errors in the admission of the testimony of two government witnesses and in the instructions given the jury by the trial judge. We affirm her conviction.

I. *Background.*

On December 10, 1987, Ms. Braxton was charged in Count I of a five-count indictment returned against her and four other persons with aiding and abetting the distribution of cocaine on July 16, 1987. On February 4, 1988, Magistrate James Groh, Jr. ordered the severance of Count I against Ms. Braxton for a separate trial.

A pretrial conference was held on January 8, 1988 before Magistrate Groh at which Braxton's attorney said that he would probably be filing an alibi motion under Federal Rules of Criminal Procedure 12.1. Braxton was given fifteen days to file the notice of alibi and the government made no objection. Magistrate Groh's Order on Preliminary Pretrial Conference memorialized that Braxton had been given until January 25, 1988 to file the notice. The government never made a written demand for the notice of alibi which Braxton filed on January 22, 1988. The notice listed three individuals who would testify that Braxton was not at her residence in Janesville but was at a different location with them at approximately 8:30 p.m. on July 16, 1987, the day and time when the distribution of cocaine allegedly took place at Ms. Braxton's home.

The government concedes that it never submitted a written notice stating the names and addresses of the witnesses upon whom it would rely to establish Ms. Braxton's presence at her home. However, Braxton was apparently aware of the probability that the government would rely on the testimony of Detective Suzanne Waddell (the undercover agent assigned to the case) and that of co-defendant Nels Quam. Ms. Braxton admitted possessing a police report prepared after an interview with Mr. Quam. She does not contest the government's statement that it provided her counsel on February 24, 1988 (approximately one month before trial) with copies of two other reports prepared by the government after interviews with Nels Quam, as well as a report made based on interviews of Ms. Braxton's alibi witnesses. She does not argue that she was prevented in any way from contacting Mr. Quam in order to prepare before the trial began.

The trial was conducted on March 22 and 23, 1988. The government called Officer Suzanne Waddell as its first witness. She testified that she saw Ms. Braxton at ap-

proximately 8:00 p.m. at her apartment and described her appearance. Ms. Waddell further testified that she left the residence and returned in the company of Nels Quam at approximately 8:30 p.m. to speak with Ms. Braxton's son, Jessie Leavy. She said that she approached Jessie Leavy, asked him if she could purchase seven quarter grams of cocaine, and then watched Leavy enter the apartment and walk over to Ms. Braxton. Waddell testified that Leavy put his hand in his pocket, moved it towards the defendant, and then put his hand back in his pocket and left the residence. Ms. Waddell said that she did not see Braxton take money or give him cocaine. However, she did testify that Leavy gave her seven quarter grams of cocaine and then she overheard Braxton say she had been shorted twenty dollars. The government then called John Nied to testify to the authenticity of the cocaine and rested its case.

During this testimony, Braxton objected pursuant to Rule 12.1(b), but the court overruled the objection. Braxton objected two more times pursuant to Rule 12.1(b) in the first day of trial. The trial judge called a bench conference at which counsel for Ms. Braxton objected that she was not provided with a written notice pursuant to Rule 12.1(b). The government responded that the written demand required by Rule 12.1 had not been made by the government. The defendant claimed that her notice of alibi was made pursuant to the Magistrate's order. The government also argued that the defendant had not been prejudiced by the procedures used, because the name of the only witness the government could possibly have called to rebut Ms. Braxton's alibi defense had been disclosed to her, i.e., Nels Quam. The court overruled the objection and permitted the testimony of Officer Waddell to stand.

Defendant presented her case by testifying, along with two alibi witnesses, that she was not at her apartment at 8:30 p.m. on July 16, 1987. Before the second day of trial, Ms. Braxton moved to prevent Nels Quam from testifying in rebuttal on the grounds that his testimony would not rebut anything that the government did not already know before the defense made its case and that the government had already rested its case-in-chief so it could not now have Quam testify to Braxton's presence at her apartment. The court denied this motion. Quam testified that he went with Officer Waddell to Ms. Braxton's apartment and spoke with her there. He testified further that he believed it was Mae Braxton's voice that he heard yell out the window that the money paid by Waddell and Quam was twenty dollars short.

Ms. Braxton's attorney moved, at a side bar conference, to strike Quam's testimony because it was improper rebuttal and that the information should have been brought in during the government's case-in-chief. The court ruled that the testimony was properly admitted. The court reasoned that under the authority of *United States v. Cerro*, 775 F.2d 908 (7th Cir.1985), the government was not obligated to provide Ms. Braxton with the evidence that it would use to impeach her defense even though she had given notice of the defense. The court said that rebuttal should be offered to those defenses which are brought in during defendant's testimony. The court also indicated that if, in fact, the testimony was cumulative, the objection of Ms. Braxton was not timely.

Before trial, Braxton requested four specific jury instructions: Devitt & Blackmar Burden of Proof Instruction 11.14, Devitt & Blackmar Alibi Instruction 13.08 or her proposed theory of defense instruction, and a "testimony of an accomplice" instruction. The court refused to give the Devitt & Blackmar 11.14 and 13.08 instructions, and gave the less expansive Seventh Circuit Instructions 2.06 and 4.03 instead. The court gave a theory of defense instruction which included Seventh Circuit 4.03 (alibi instruction) and an accomplice instruction but neither were as broad as those requested by defendant.

The jury returned a guilty verdict on March 23, 1988. The court sentenced Ms. Braxton on May 12, 1988.

## II. *Standard of Review.*

With regard to the admission of the testimony of Officer Waddell and Mr. Quam,

we may reverse the trial court's decision " 'only upon a clear showing of abuse of discretion.' " *United States v. Garver,* 809 F.2d 1291, 1297 (7th Cir.1987) (citation omitted). Absent " 'a significant showing of unfair prejudice, evidence with substantial probative value should not be excluded.' " *Ibid.* (citation omitted). With regard to allegedly erroneous instructions, we view them in the context of the whole, *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973), and if they " 'treat the issues fairly and accurately they will not be interfered with on appeal.' " *United States v. Croft,* 750 F.2d 1354, 1366 (7th Cir.1984) (citation omitted).

### III. *Analysis.*

### A. *Admission of Waddell and Quam Testimony.*

Rule 12.1 requires that a defendant provide a notice of alibi when the government has demanded it.[1] In addition, Subsection (b) of that rule requires that the government provide in response to this alibi notice a list of the rebuttal witnesses it plans to use. However, the court in *United States v. Bouye,* 688 F.2d 471 (7th Cir.1982) found that a defendant's *gratuitous and unsolicited* disclosure of alibi witnesses does not obligate the government pursuant to Rule 12.1(b) to furnish the names of rebuttal witnesses linking the defendant to the scene of the crime.

Braxton argues that she was ordered to provide the notice of alibi, so that the government was required formally to provide the names of rebuttal witnesses.

Nevertheless, it is undisputed that the government never requested the alibi notice pursuant to Rule 12.1. The magistrate granted defendant an extension of time to file the notice at her request, but did not order her to file it. As the government puts it, "the only difference between *Bouye* and the instant case is that Bouye sent his notice of alibi to the government without apparently giving advance notice of his intent to do so to the trial court." Brief of Plaintiff–Appellee at 11–12.

In addition, even though the government did not have a duty to respond to the notice of alibi, the government did provide Braxton with copies of all reports of interviews with Quam as well as those the investigating officers made in reference to defendant's proposed alibi witnesses. Finally, Ms. Braxton does not dispute that she knew that Waddell would testify and that she could contact Mr. Quam before trial. It is difficult, therefore, to see how she was prejudiced by not having formal notice of rebuttal witnesses.

■■■ The government is not required to provide a defendant with a list of all prospective government witnesses. *United States v. Napue,* 834 F.2d 1311, 1317 (7th Cir.1987). Rule 12.1 does not apply here and there is no general requirement that either side give notice of impeachment evidence. *United States v. Cerro,* 775 F.2d 908, 914–15 (7th Cir.1985).

Ms. Braxton argues that her case is governed by *Mauricio v. Duckworth,* 840 F.2d 454 (7th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 177, 102 L.Ed.2d 146 (1988), a habeas corpus case in which we found that

---

1. Rule 12.1 provides in relevant part:

(a) **Notice by Defendant.** *Upon written demand of the attorney for the government* stating the time, date, and place at which the alleged offense was committed, the defendant shall serve within ten days, or at such different time as the court may direct, upon the attorney for the government a written notice of his intention to offer a defense of alibi. Such notice by the defendant shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom he intends to rely to establish his alibi.

(b) **Disclosure of Information and Witness.** Within ten days thereafter, but in no event less than ten days before trial, unless the court otherwise directs, the attorney for the government shall serve upon the defendant or his attorney a written notice stating the names and addresses of the witnesses upon whom the government intends to rely to establish the defendant's presence at the scene of the alleged offense and any other witnesses to be relied on to rebut testimony of any of the defendant's alibi witnesses.

Fed.R.Crim.P. 12.1(a), (b) (emphasis added).

the defendant's due process rights were violated when the government withheld the identity of alibi rebuttal witnesses. However, as the government points out, *Mauricio* is distinguishable from the present case, since under the Indiana rules a defendant is always required to provide a notice of alibi in contrast to the federal rules where a defendant, such as Ms. Braxton, is only required to provide notice when the government demands it. In addition, there is no evidence in the present case, as there was in *Mauricio*, that the government tried to withhold the identity of alibi witnesses.

Braxton's reliance on *Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988), is also misplaced, since that case is different from the present one. In *Taylor*, the prosecutor had filed a written demand for a notice of alibi, but defense counsel failed to include the name of one witness until the trial had already begun. Defense counsel claimed that he did not know where the witness was until just before the trial. After hearing the proffered testimony of this witness which showed that counsel did, in fact, know how to locate the witness, the district court refused to let the witness testify. The trial court found that defense counsel's refusal to provide information as to this witness's whereabouts to be, "a blatant violation of the discovery, willful violation of the discovery rules." *Taylor*, 108 S.Ct. at 650. In contrast to the *Taylor* case, the government did not violate a discovery rule in the present case, and Braxton could not possibly have been surprised by the witnesses called by the government. The case of *United States v. Myers*, 550 F.2d 1036 (5th Cir.1977), *cert. denied*, 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978), is a case cited by Braxton which deals with a demand by the government rather than a voluntary production of the notice of alibi as in the present case.

Braxton makes a separate argument that the government should not have been allowed to present Quam as a rebuttal witness rather than in its case-in-chief. However, defendant's only legal authority for this proposition is that the court has discretion in determining the proper scope of rebuttal with respect to evidence which could be introduced in the case-in-chief. *Geders v. United States*, 425 U.S. 80, 86–87, 96 S.Ct. 1330, 1334, 47 L.Ed.2d 592 (1976); *Hochstadt v. Worcester Found. for Experimental Biology*, 545 F.2d 222, 226 (1st Cir.1976). These authorities, however, undermine the very proposition that defendant would have them support. They show the discretion that a district judge has in ordering the evidence, and do not, therefore, require the government to put certain evidence in its case-in-chief absent an order from the trial judge. Braxton argues that she was prejudiced because "[i]f Quam had testified in the government's case-in-chief, it is possible the defense would have been different and certain testimony would not have been offered at all." Brief of Defendant–Appellant at 18. However, she cites no legal authority to show that the district court committed reversible error by allowing the government to put on its case as it did.[2] In any event, she knew that Quam was a prospective government witness, had copies of government interview reports with Quam and could have contacted him before trial to determine her defense and whether to testify.

### B. *Jury Instructions.*

Ms. Braxton argues that the trial court instructions, as a whole, were so prejudicial as to require reversal under the authority of *United States v. Crouch*, 528 F.2d 625, 631 (7th Cir.), *cert. denied, Carlyle v. United States*, 429 U.S. 900, 97 S.Ct. 266, 50 L.Ed.2d 184 (1976). She claims that three of the instructions were insufficient:

---

**2.** When he overruled Braxton's objection to the Quam rebuttal testimony, Judge Shabaz also noted that the evidence might be cumulative, but that such an objection was waived. The issue has not been raised on appeal. In any case, admission of cumulative evidence is not grounds for reversal absent a showing of preju-

dice. *Bell v. City of Milwaukee*, 746 F.2d 1205, 1275–76 (7th Cir.1984); Fed.R.Evid. 403. The only prejudice defendant has claimed, that "it is possible the defense would have been different and certain testimony would not have been offered at all," Brief of Defendant–Appellant at 18, is not grounds for reversal for cumulativeness.

the burden of proof instruction, the alibi instruction and the accomplice instruction.

### 1. Burden of Proof Instruction.

Ms. Braxton requested the burden of proof instruction from Devitt & Blackmar 11.14,[3] but the court used *Federal Criminal Jury Instructions of the Seventh Circuit* 2.06 (1980) and instructed the jury as follows:

The defendant is presumed to be innocent of the charge. This presumption remains with the defendant throughout every stage of the trial and during your deliberations on the verdict, and is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that the defendant is guilty.

The government has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the government throughout the case. The defendant is not required to prove her innocence or to produce any evidence.

Docket No. 147, p. 36. Ms. Braxton argues that these instructions were insufficient in three ways. First, she argues that the jury should have been instructed that the defendant begins the trial with a "clean slate." She argues, secondly, that the jury should have been told that they could not convict her on "mere suspicion or conjecture." Finally, she requested an instruction that if the evidence could lead to a conclusion of guilt or innocence that the jury should find her innocent (the "two conclusion instruction").

We point out the preference of the Committee on Federal Criminal Jury Instructions of the Seventh Circuit for "eliminating confusing and unhelpful elaborations which sometimes accompany instructions on the presumption of innocence." Committee Comment, Seventh Circuit Instruction 2.06, at 17. The "clean slate" portion of the Devitt & Blackmar 11.14 is an elaboration of the presumption of innocence instruction. The Supreme Court wrote of the requested instruction that "it appears to have been well suited to forestalling the jury's consideration of extraneous matters . . ." *Taylor v. Kentucky,* 436 U.S. 478, 488 n. 16, 98 S.Ct. 1930, 1936 n. 16, 56 L.Ed.2d 468 (1978). An instruction to the jury that a defendant begins a trial with a "clean slate" is preferred by the Eighth Circuit, *United States v. Hollister,* 746 F.2d 420, 424 (1984) and the Fifth Circuit, *United States v. Walker,* 861 F.2d 810, 813 n. 4 (5th Cir.1988). *See also* Mathes, *Jury Instructions and Forms for Federal Cases* 2.01, 27 F.R.D. 39, 48 (1961).

■ However, the principle that the defendant begins the trial with no evidence against her is included in Seventh Circuit

---

**3.** Defendant requested the following instruction, omitting its definition of reasonable doubt:

The law presumes a defendant to be innocent of crime. Thus a defendant, although accused, begins the trial with a "clean slate"—with no evidence against him. And the law permits nothing but legal evidence presented before the jury to be considered in support of any charge against the accused. So the presumption of innocence alone is sufficient to acquit a defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case.

It is not required that the government prove guilt beyond all possible doubt. The test is one of reasonable doubt. A reasonable doubt is a doubt based upon reason and common sense—the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely

and act upon it in the most important of his own affairs.

The jury will remember that a defendant is never to be convicted on mere suspicion or conjecture.

The burden is always upon the prosecution to prove guilt beyond a reasonable doubt. This burden never shifts to a defendant; for the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

So if the jury, after careful and impartial consideration of all the evidence in the case, has a reasonable doubt that a defendant is guilty of the charge, it must acquit. If the jury views the evidence in the case as reasonably permitting either of two conclusions—one of innocence, the other of guilt—the jury should of course adopt the conclusion of innocence.

1 Devitt & Blackmar, *Federal Jury Practice and Instructions* 11.14, at 310–11 (3rd ed. 1977).

Instruction 4.03 both in the presumption of innocence section and in the part of the burden of proof instruction which provides that "[t]he defendant is not required to prove [her] innocence or to produce any evidence." This statement, along with the caution that the presumption of innocence "remains with the defendant throughout every stage of the trial," shows the jury that a defendant begins a trial with no evidence against her.

In addition to these instructions, the judge cautioned the jury not to rely on anything about the proceedings against Ms. Braxton except the evidence presented against her at trial. Docket No. 147, pp. 35–36. The court warned the jury not to rely on the indictment, on any media reports or on anything else heard about the case outside the courtroom. *Ibid.* Finally, in the court's pre-trial instructions, the judge did instruct the jury that the defendant "starts out with a clean slate." Docket No. 140, p. 7.

We have found no reversible error in cases in which no presumption of innocence instruction at all was given, so long as the jury's instruction regarding the government's burden of proof was sufficient. *See, e.g., United States v. De John,* 638 F.2d 1048, 1058 (7th Cir.1981). In *De John,* we relied on the principle laid out in *United States v. Lawson,* 507 F.2d 433, 442 (7th Cir.1974), *cert. denied,* 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762 (1975), that "[t]he essential aspect of the matter ... is that the jury clearly understand that there must be proof persuasive beyond a reasonable doubt." The instructions at issue before us made that burden clear to the jury.

■ Ms. Braxton's argument that the jury should have received the two conclusion instruction has no merit, since we have found such an instruction to be acceptable,

but not necessary. *United States v. Larson,* 581 F.2d 664, 669 (7th Cir.1978). The instruction is most appropriate in cases in which the evidence against the defendant is primarily circumstantial. *United States v. Cruz,* 603 F.2d 673, 675 (7th Cir.1979), *cert. denied,* 444 U.S. 1071, 100 S.Ct. 1014, 62 L.Ed.2d 752 (1980). This is not such a case.

■ The final error claimed by Ms. Braxton with regard to the reasonable doubt instruction is that the jury should have received an instruction against conviction on "mere suspicion or conjecture." However, such an instruction—which shows what evidence would be insufficient to show guilt beyond a reasonable doubt—is an unnecessary elaboration on the burden of proof instruction. We have found it "inappropriate for judges to give an instruction defining 'reasonable doubt,'" because "'[a]ttempts to explain the term "reasonable doubt" do not usually result in making it any clearer to the minds of the jury.'" *United States v. Glass,* 846 F.2d 386, 387 (7th Cir.1988) (quoting *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954)). This reasoning also applies to attempts to show what "reasonable doubt" is not.

## 2. *Theory of Defense Instruction.*

Defendant argues that the jury should have been given the Devitt & Blackmar 13.08 alibi instruction,[4] rather than the Seventh Circuit Instruction 4.03 that was given. In addition to Instruction 4.03, the trial court included a theory of defense instruction incorporating Ms. Braxton's specific alibi. Although Ms. Braxton gives no reason why she was entitled to the Devitt & Blackmar Instruction, she argues that an instruction should have been given which referred to the testimony of her alibi witnesses under the authority of *United*

---

**4.** The requested alibi instruction provides:

Evidence has been introduced tending to establish an alibi, which amounts to a contention that the defendant was not present at the time when or at the place where he is alleged to have committed the offense charged in the indictment.

If, after consideration of all the evidence in the case, you have a reasonable doubt as to

whether the defendant was present at the time and place the alleged offense was committed, you must acquit him.

The jury will bear in mind the government's burden of establishing the involvement of the defendant, and all other essential elements of the offense as defined in these instructions, by proof beyond a reasonable doubt.

1 Devitt & Blackmar § 13.08.

*States v. Martin–Trigona,* 684 F.2d 485, 493 (7th Cir.1982).

■ The holding of *Martin–Trigona* is that a defendant is entitled to a theory of defense instruction when it is supported by the law and the evidence, not that a defendant is entitled to any particular theory of defense instruction. An error to guard against when a defendant relies on an alibi defense is the possibility of misleading the jury into finding that the defendant's failure to prove her alibi defense is evidence of her guilt. This error occurs when the jury has not been cautioned by an alibi instruction that the burden of proving defendant's guilt does not shift from the government to the defendant who claims an alibi. *United States v. Burse,* 531 F.2d 1151, 1152 (2d Cir.1976). *See also Wright v. Smith,* 569 F.2d 1188, 1192 (2d Cir.1978).

■ In the present case, the trial court instructed as follows:

The defendant claims that she was not present at her residence on July 16, 1987 at the time the alleged offense was to have occurred.

Evidence has been introduced that the defendant was not present at the time and place where the crime charged in the indictment is alleged to have been committed. The government has the burden of establishing beyond a reasonable doubt the defendant's presence at that time and place.

Docket No. 147, pp. 39–40. The instruction, which includes Seventh Circuit Instruction 4.03, properly reminds the jury that the burden of proof is on the government. The trial court did not err by failing to incorporate into the instruction a full summary of Ms. Braxton's alibi evidence.

3. *Accomplice Instruction.*

Ms. Braxton argues that the accomplice instruction given by the court was deficient in three ways. She argues that the jury should have been instructed that "it should never convict a defendant upon the unsupported testimony of the alleged accomplice unless the jury believes that unsupported testimony beyond a reasonable doubt." Brief of Defendant–Appellant at 24. She argues that the instruction should have included a discussion of the plea agreement entered into by accomplice Nels Quam and the possible impact that Quam's hope of benefits could have on his credibility. Finally, she asserts that the court erred by not instructing that Quam's guilty plea should not be used against her.

"The general rule is that accomplice instructions are preferred when accomplices testify against defendants, due to the inherent unreliability of this testimony, but the failure to give such an instruction is not reversible error." *United States v. McCabe,* 720 F.2d 951, 955 (7th Cir.1983). The failure to give an accomplice instruction is not error if the accomplice testimony is sufficiently corroborated. *Id.* at 956.

■ The court did give an accomplice instruction as follows:

You have heard testimony of Nels J. Quam who has received benefits from the government in connection with this case. You may give his testimony such weight as you feel it deserves keeping in mind that it must be considered with caution and great care.

Docket No. 147, p. 37. The instruction is the Seventh Circuit Testimony of Informer Instruction 3.20. That form instruction leaves it to the discretion of the district judge whether or not to name the specific benefit. *See* footnote to Instruction 3.20 at p. 42. The informant instruction was appropriately used, since the same unreliability problem is present whether it is an accomplice cooperating with the government in exchange for a reduced sentence or an informer, in exchange for money or other benefits.

■ Ms. Braxton's complaint that the court erred by not instructing that there could be no conviction upon unsupported accomplice testimony unless the jury believed the testimony beyond a reasonable doubt has no merit here. Nels Quam's testimony was extensively corroborated by that of Officer Waddell. In addition, the warning to consider the testimony "with caution and great care" served the purpose of instructing the jury not to convict based

only on accomplice testimony unless it found Quam's testimony to be highly credible.

Defendant complains specifically that the accomplice instruction given by the trial judge referred to benefits already received but not to those yet to be realized. She argues that *United States v. Dailey,* 759 F.2d 192, 200 (1st Cir.1985), stands for the proposition that "failure to instruct the jury as to the benefits obtained by an accomplice witness is error" and that, accordingly, the instruction should have included a specific reference to future benefits. However, the *Dailey* court's holding was that accomplices who had signed conditional plea agreements should be able to testify at trial in spite of the risk of perjury. The lower court's decision to bar the testimony was, therefore, reversed. The reviewing court then instructed the district court on remand to read the plea agreements to the jury, but did not hold that the failure to do so was error. The better practice is for the court to instruct the jury about the plea agreement and the benefits that the accomplice hopes to receive so that the jury knows as much as possible about an accomplice's incentive to falsify testimony. *See Pattern Criminal Instructions* 24, at p. 32 (Federal Judicial Center 1988). However, the failure to do so in the present case was not reversible error, particularly since Ms. Braxton was able to bring out, and the jury was aware of, the details of Nels Quam's plea agreement—including the possibility of future benefits—in cross-examination. Docket No. 141, pp. 34–36.

Finally, Ms. Braxton asserts that the court erred by failing to warn the jury not to rely on Nels Quam's guilty plea as evidence against her. The presence or absence of a limiting instruction is one factor in determining the prejudicial impact of the admission of a co-defendant's guilty plea. *United States v. Fleetwood,* 528 F.2d 528, 532 (5th Cir.1976). The government did not attempt to use Mr. Quam's guilty plea as evidence against Ms. Braxton but only to mitigate any potential harm to the witness's credibility caused by cross-examination about the guilty plea. Therefore, Ms.

Braxton was not prejudiced by the introduction of the plea even without an instruction. In fact, Ms. Braxton's attorney told the government that he was planning to put the plea agreement into evidence if the government did not. Docket No. 141, p. 31. Although the better practice is to give a cautionary instruction, *see* Seventh Circuit Instruction 3.23 and Comment, it was not reversible error to omit it here.

### IV. *Conclusion.*

The trial court did not err by admitting the testimony of Officer Waddell and Nels Quam, since the government was not required pursuant to Rule 12.1(b) to provide a formal list of witnesses to rebut Ms. Braxton's alibi. Even if Rule 12.1 required production of the list, Ms. Braxton was not prejudiced by failing to receive it. In addition, it was not error for Nels Quam to testify in rebuttal rather than in the government's case-in-chief. The district court's instructions to the jury did not constitute reversible error even though a more thorough accomplice instruction would have been beneficial to the jury. Ms. Braxton's conviction is affirmed.